UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT LEDFORD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE STATE OF CALIFORNIA, et al.,<br><br>　　　　Defendants. | No. 2:15-cv-02381-TLN-EFB<br><br>**ORDER** |

This matter is before the Court pursuant to two separate motions to dismiss Plaintiff Scott Ledford's Complaint (ECF No. 1). The State of California, by and through the California Department of Corrections and Rehabilitation, filed a motion to dismiss on behalf of those named as defendants in Counts 1 and 2 of the Complaint (collectively, the "Institutional Defendants").[1] (ECF No. 14.) Nagabhushana Malakkla, Chengjie Wei, and Barbara Woodward (collectively, the "Individual Defendants") filed a separate motion to dismiss. (ECF No. 19.) The Institutional Defendants and the Individual Defendants are collectively referred to as "Defendants." Plaintiff filed a single opposition addressing both motions to dismiss. (ECF No. 20.) Defendants filed a joint reply to Plaintiff's opposition. (ECF No. 21.) The Court has carefully considered the

---

[1] The Complaint names the State of California, California Department of Corrections and Rehabilitation, Deuel Vocational Institute, and Valley State Prison separately as defendants. The Institutional Defendants indicate that Deuel Vocational Institute and Valley State Prison are facilities of the California Department of Corrections and Rehabilitation rather than separate entities. (ECF No. 14 at 3 n.2.) Resolution of the instant motions does not turn on this distinction.

1

arguments raised by the parties. For the reasons set forth below, the Institutional Defendants' motion is GRANTED and the Individual Defendants' motion is DENIED.

### I. FACTUAL ALLEGATIONS

This case arises out of the incarceration of a man who needs eyeglasses to see but who spent nearly eight months imprisoned without them. (*See* ECF No. 1 ¶¶ 14, 37.) Plaintiff was convicted of state felony charges and placed in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at Deuel Vocational Institute ("DVI") on or about August 9, 2013. (ECF No. 1 at ¶ 13.) Plaintiff alleges that, according to CDCR policy, an evaluation by an optometrist is required if an inmate's visual acuity is worse than 20/70. (ECF No. 1 at ¶ 18.) Plaintiff has a visual acuity of 20/200 without corrective lenses. (ECF No. 1 at ¶ 2.) During an initial medical screening, Plaintiff told medical staff that he is visually impaired and cannot see at any distance without corrective lenses, which he did not have with him. (ECF No. 1 at ¶ 14.) Plaintiff indicates that a "corrected vision of no more than 20/200 is considered legally blind." (ECF No. 1 at ¶ 2 n.1.) While at DVI, Plaintiff asserts that he filed "Accommodation Requests and Health Care Appeals, seeking treatment for his vision impairment[.]" (ECF No. 1 at ¶ 15.)

Plaintiff alleges that on or about October 16, 2013, Defendant Wei, a registered nurse, examined Plaintiff and asked him to read a Snellen Chart.[2] (ECF No. 1 at ¶¶ 6, 16.) Plaintiff indicated he was unable to read any portion of the Snellen Chart, and Defendant Wei terminated the examination and denied Plaintiff's request for corrective lenses. (ECF No. 1 at ¶ 16.) Plaintiff asserts that Defendant Wei purposefully misreported his visual acuity to be 20/70 in order to deny Plaintiff an evaluation by an optometrist. (ECF No. 1 at ¶¶ 17, 20.) Plaintiff never received an examination by an optometrist, corrective lenses, or any other treatment for his vision impairment while housed in DVI. (ECF No. 1 at ¶¶ 21, 25.)

/ / /

---

[2] According to Plaintiff, a Snellen chart is an eye chart that can be used to measure visual acuity that is 20/200 or better. (*See* ECF No. 1 at ¶ 16 & n.3.) Generally, the chart is printed with eleven lines of letters; the first line consists of one very large letter; subsequent lines have increasing numbers of letters that decrease in size. (ECF No. 1 at ¶ 16 n.2.)

Plaintiff alleges that his lack of treatment caused him to suffer frequent headaches from squinting, and caused him to perform poorly on the Test of Adult Basic Education ("TABE"). (ECF No. 1 at ¶ 22.) His poor TABE results disqualified him from certain jobs, programs, and educational opportunities that would have otherwise been available to him. (ECF No. 1 at ¶ 22.) Plaintiff further alleges that he could not enjoy television, read books from the prison library, or identify visual hazards because he did not receive treatment for his vision. (ECF No. 1 at ¶ 23.) Similarly, Plaintiff alleges that, without treatment, he suffered from fear and anxiety because he was unable to determine other inmates' intentions from nonverbal cues. (ECF No. 1 at ¶¶ 23–24.)

On or about December 2, 2013, Plaintiff was transferred from DVI to Valley State Prison ("VSP"). (ECF No. 1 at ¶ 26.) Plaintiff alleges that while there he repeatedly requested to be evaluated by an optometrist and receive corrective lenses. (ECF No. 1 at ¶ 27.) Likewise, he filed "Accommodation Requests and/or Health Care Appeals while at VSP for treatment of his visual impairment." (ECF No. 1 at ¶ 28.) On December 10, 2013, Plaintiff received a "vision impaired vest." (ECF No. 1 at ¶ 29.) Plaintiff alleges that he was prohibited from "any assignments that require ability to read or see distances[.]" (ECF No. 1 at ¶ 29.)

Plaintiff alleges that on January 2, 2014, he fell into a small hole while walking through the facility's D-1 yard. (ECF No. 1 at ¶ 30.) He suffered a Hills-Sachs fracture and a torn left rotator cuff. (ECF No. 1 at ¶ 31.) Plaintiff alleges that the hole would have been visible to him if he had corrective lenses. (ECF No. 1 at ¶ 30.) Plaintiff further alleges that the fall caused him to experience numbness and tingling in his left hand, a restricted range of motion in his left arm, neck spasms, and difficulty sleeping. (ECF No. 1 at ¶ 32.)

Plaintiff alleges that on January 8, 2014, he received an optometry evaluation and was prescribed glasses, which he received on March 25, 2014. (ECF No. 1 at ¶¶ 33, 37.) The "supervising" registered nurse requested that Plaintiff contact "medical" immediately if unable to carry out his activities of daily living in a safe manner, until his glasses arrived. (ECF No. 1 at ¶ 33.)

On February 18, 2014, Plaintiff was evaluated by Carmelino Galang, M.D. at San Joaquin General Hospital. (ECF No. 1 at ¶ 34.) Dr. Galang ordered an MRI to rule out a rotator cuff tear

3

and indicated that Plaintiff would be "reevaluated after the MRI is done." (ECF No. 1 at ¶ 34.) Accordingly, an MRI was scheduled for Plaintiff for March 10, 2014. (ECF No. 1 at ¶ 35.) Plaintiff claims that on March 4, 2014, he was informed that Defendants Woodward and Malakkla cancelled the MRI because it was too close to his scheduled release date of April 15, 2014. (ECF No. 1 at ¶ 36.)

After Plaintiff's release on or about April 15, 2014, Plaintiff received an MRI, which confirmed Plaintiff had a torn left rotator cuff. (ECF No. 1 at ¶ 40.) Plaintiff's physician promptly approved surgery after this MRI. (ECF No. 1 at ¶ 40.) Plaintiff alleges that he experienced pain and suffering while awaiting surgery, which was delayed due to the cancellation of his March 10, 2014 MRI by Defendants Woodward and Malakkla. (ECF No. 1 at ¶ 41.) As of the date of the Complaint, Plaintiff alleged that he continued to experience numbness and tingling in his fingertips of his left hand, restricted range of motion in his left arm, neck spasms, and difficulty sleeping. (ECF No. 1 at ¶ 42.) Additionally, as of the date of the Complaint, Plaintiff asserted that he would soon have a second surgery on his rotator cuff. (ECF No. 1 at ¶ 42.)

Plaintiff claims to have been billed $32,614.72 in medical expenses relating to his fall. (ECF No. 1 at ¶ 43.) He further asserts the State of California, CDCR, DVI, and VSP receive federal funding. (ECF No. 1 at ¶ 44.)

## II.   STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). Only where a plaintiff fails to "nudge[ ] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id*. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any

exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)).

### III. ANALYSIS

Plaintiff's Complaint sets out four claims: (1) violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, against the Institutional Defendants; (2) violation of Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, against the Institutional Defendants; (3) violation of the Eighth Amendment against Defendant Wei, pursuant to 42 U.S.C. § 1983; and (4) violation of the Eighth Amendment against Defendants Woodward and Malakkla, pursuant to 42 U.S.C. § 1983.

Defendants move to dismiss each of the claims in the Complaint for failure to state a claim upon which relief may be granted. The Institutional Defendants move to dismiss the first and second claims. Defendant Wei moves to dismiss the third claim. Defendants Woodward and Malakkla move to dismiss the fourth claim. Additionally, the Individual Defendants move the Court to dismiss Plaintiff's request for punitive damages. The Court will address the claims in order, discussing the first two claims together due to their similarity.

#### A. ADA and RA Claims

Plaintiff alleges a violation of Title II of ADA and § 504 of the RA. Due to the similarity of the claims, the Court will analyze these claims together. *See Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (noting that "Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act").

Title II of the ADA and § 504 of the RA "both prohibit discrimination on the basis of disability." *Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA

provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Both apply to inmates within state prisons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong v. Wilson*, 124 F.3d 1019, 1022–23 (9th Cir.1997).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of her disability." *Lovell,* 303 F.3d at 1052. "Similarly, under Section 504 of the Rehabilitation Act, a plaintiff must show: (1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Weinreich*, 114 F.3d at 978 (emphasis removed). "To recover monetary damages" under either "a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

The Institutional Defendants' argument with respect to these claims can be summarized into a single sentence: "Plaintiff's complaint fails to allege the State discriminated against him *because* of his disability." (ECF No. 14 at 8:18–20 (emphasis retained).)

Ninth Circuit precedent is clear "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010). "[T]he same is true for section 504 of the [RA][.]" *Figueira ex rel. Castillo v. Cty. of Sutter*, No. 2:15-cv-00500-KJM-AC, 2015 WL 6449151, at *9 (E.D. Cal. Oct. 23, 2015); *see also Tandel v. Cty. of Sacramento*, No. 2:11-cv-00353-MCE-AC, 2:09-cv-00482-MCE-GGH, 2015 WL 1291377, at *18 (E.D. Cal. Mar. 20, 2015). Simply put, "[i]nadequate treatment or lack of

treatment for Plaintiff's medical condition *does not in itself* suffice to create liability under either statutory scheme." *Tandel*, 2015 WL 1291377, at *18 (emphasis added). "Inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld *by reason of a disability*." *Marlor v. Madison Cty., Idaho*, 50 F. App'x 872, 873 (9th Cir. 2002) (emphasis retained); *see also McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58 (D. Me. 1999) (denying the defendant's motion for summary judgment on the plaintiff's ADA claim where the plaintiff introduced evidence in support of his contention that he was "discriminated against . . . because of his HIV-positive status, not by providing him with inadequate care, but by denying him immediate access to prescribed medications, a service provided to detainees in need of prescriptions for other illnesses").

As currently drafted, Plaintiff's ADA and RA claims fail to state a claim upon which relief can get granted. This is illustrated in a paragraph repeated verbatim in the Complaint under both claims:

> "Here, [Plaintiff] is a qualified individual with a disability because his uncorrected vision is 20/200, which significantly affects his ability to perform basic daily functions and, if uncorrected, significantly increases his chances of sustaining an injury. [Plaintiff] was *either excluded from participation in or denied the benefits* of a public entity's services, programs, or activities, *or was otherwise discriminated against because in denying treatment* [Plaintiff] suffered frequent headaches, performed poorly on TABE *and therefore* was disqualified from programs, jobs and educational opportunities, was unable to enjoy television or read books from the prison's library, suffered constant fear and anxiety because he was unable to understand the nonverbal cues of other inmates, was unable to identify most otherwise visible environmental hazards and ultimately stepped in a hole suffering injuries."

(ECF No. 1 at ¶¶ 48, 54 (emphasis added).) Quite simply, Plaintiff alleges that he was excluded from participating in or receiving the benefits of certain services, programs, or activities as a byproduct of inadequate vision correction treatment. (*See also e.g.*, ECF No. 1 at ¶¶ 22–23.) He does not allege that his vision was not corrected *because of his disability*. Plaintiff's argument in his opposition cannot cure this. *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

8

("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint.") (internal quotation marks and modifications omitted).

For the foregoing reasons, the Institutional Defendants' motion to dismiss Plaintiff's first and second claims is GRANTED.

B. Eighth Amendment Claim Against Defendant Wei

Defendant Wei moves to dismiss Plaintiff's third claim for two reasons. First, Defendant Wei argues that Plaintiff has not alleged a sufficiently serious medical need to state a claim for violation of the Eighth Amendment's proscription against cruel and unusual punishment. (ECF No. 19 at 7.) Second, Defendant Wei argues "misreport[ing]" the results of an eye exam is at most medical malpractice, not a constitutional violation. (ECF No. 19 at 7.) Each argument must be rejected.

"The government has an obligation to provide medical care for those whom it is punishing by incarceration, and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks omitted). "In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show deliberate indifference to his serious medical needs." *Id*. (internal quotation marks omitted). "This includes both an objective standard — that the deprivation was serious enough to constitute cruel and unusual punishment — and a subjective standard — deliberate indifference." *Id*. (internal quotation marks omitted). "To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need." *Id*. "A prison official is deliberately indifferent under the subjective element of the test only if the official knows of and disregards an excessive risk to inmate health and safety." *Id*. (internal quotation marks omitted).

Defendant Wei's first argument is inconsistent with *Colwell*. There, the Ninth Circuit held blindness in one eye is a "serious medical need." *Colwell*, 763 F.3d at 1066. In that case, the prisoner was blind in one eye due to a cataract but he had 20/20 vision in his other eye. *Id*. at 1063–65. Here, Plaintiff's alleged loss of vision is more acute than the prisoner in *Colwell*

because he is functionally blind in both eyes.  Moreover, *Colwell* also made clear that in the case of prisoners with visual deficiencies the vision loss itself need not be painful in order to constitute a serious medical need.  *Id*. at 1066–67.  Plaintiff's allegation that he has 20/200 visual acuity and is unable "to see at any distance" without corrective lenses constitutes a serious medical need for Eighth Amendment purposes.

Defendant Wei's second argument mischaracterizes the nature of Plaintiff's third claim.  Plaintiff alleges that Defendant Wei "*purposefully* misreported" the results "*in order to deny him*" an optometrist evaluation after Plaintiff informed Defendant Wei his vision was so poor he could not even see the chart.  (ECF No. 1 at ¶¶16–17, 20.)  Plaintiff is not seeking to constitutionalize a negligent slip of the pen as Defendant Wei suggests, or even a cover up of an already-made mistake.  There is a difference between a medical professional negligently misreporting which of an inmate's limbs or organs should be removed and doing so purposefully in order have the wrong limb or organ removed.  Plaintiff has alleged that Defendant Wei's purposeful conduct left him without the use of his eyes.

For the foregoing reasons, Defendant Wei's motion to dismiss Plaintiff's third claim is DENIED.

### C. Eighth Amendment Claim Against Woodward and Malakkla

Plaintiff claims that Defendants Woodward and Malakkla's cancellation of his MRI due to his scheduled release demonstrates deliberate indifference to a serious medical need.  Defendants move to dismiss this claim for three reasons.  Each reason must be rejected.

First, they argue that the "crux of Plaintiff's complaint centers around a difference in medical opinions, including a difference in opinions as to the urgency of Plaintiff's need for an MRI."  (ECF No. 19 at 5.)  This is not what Plaintiff alleges.  Plaintiff alleges Defendants Woodward and Malakkla cancelled his MRI "*because* the procedure . . . . was . . . *too close* to his discharge date."  (ECF No. 1 at ¶¶ 36, 70 (emphasis added).)  It is Defendants Woodward and Malakkla that allege that the decision to "delay" the MRI resulted from an exercise of medical judgment.  (ECF No. 19 at 5–6.)  It is just that — a factual allegation.  At this stage in the proceedings, it is Plaintiff whose factual allegations are taken as true and who is given the benefit

10

of every reasonable inference from his well-pleaded factual allegations. For this reason, Defendants Woodward and Malakkla's first argument must be rejected.

Second, Defendants Woodward and Malakkla argue that a delay in medical treatment must lead to "*further* injury" in order to make out an Eighth Amendment claim. (ECF No. 19 at 8 (emphasis retained).) If Defendants' argument were accepted, a prison official fully aware that a prisoner was suffering from the most excruciating pain conceivable could leave him to suffer indefinitely without violating the Eighth Amendment because the prisoner's pain could not get any worse. This is not the law. *See, e.g.*, *Fields v. Gander*, 734 F.2d 1313, 1315 (8th Cir. 1984) ("Fields claims that Gander knew of the pain he was suffering during late April or early May of 1983, observed swelling in Fields' face, and still refused to provide dental care for him for up to three weeks. In our view, Fields' allegations could support a finding of an eighth amendment deprivation in violation of section 1983."). Not surprisingly, the cases cited by Defendants do not support such an extreme proposition. *See, e.g.*, *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (citing *Fields* with approval); *see also Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an eighth amendment violation.") (quoting *Hunt*, 865 F.2d at 200).

Ninth Circuit precedent provides that an inmate can show a "serious medical need" by demonstrating that "*failure to treat a prisoner's condition could result in* further significant injury or the *unnecessary and wanton infliction of pain*." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). Assuming the first prong is met, the inmate must also show "the defendant's response to the need was deliberately indifferent." *Id*. "This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment[.]" *Id*. (internal quotation marks omitted). "A prisoner need not show his [resulting] harm was substantial." *Id*.

/ / /

/ / /

11

Here, Plaintiff alleges that he was suffering pain from his fall-related injuries while awaiting surgery. (*See, e.g.*, ECF No. 1 at ¶ 41.) Plaintiff further alleges the cancellation of his already-scheduled MRI by Defendants Woodward and Malakkla due to his release date evinced deliberate indifference to this suffering. (*See, e.g.*, ECF No. 1 at ¶¶ 70–71.) He claims his surgery was promptly scheduled after his MRI was ultimately conducted. (ECF No. 1 at ¶ 40.) Consequently, the cancellation resulted in harm to him — unnecessarily prolonged pre-surgery suffering. For these reasons, Defendant Woodward and Malakkla's second argument must be rejected.

Third, Defendants Woodward and Malakkla contend they are entitled to qualified immunity. The Court finds that it cannot conclude that qualified immunity is appropriate at this stage in the proceedings. "Qualified immunity is an affirmative defense that must be raised by a defendant." *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). Therefore, dismissal under Rule 12(b)(6), "is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." *Id*.

Here, aside from indirectly referencing their first two arguments that the Court has already rejected, Defendants Woodward and Malakkla raise two additional arguments for why they are entitled to qualified immunity. Each turns in part on factual allegations not contained in the Complaint and, therefore, are not appropriately decided at the motion to dismiss stage. First, Defendants Woodward and Malakkla argue they would have "no reason to believe they would be violating Plaintiff's constitutional rights by delaying a diagnostic test that *could not be* recommended, approved, scheduled, completed, and followed up with treatment by a specialist, . . . *within the month remaining on the Plaintiff's sentence*." (ECF No. 19 at 11 (emphasis added).) Because the MRI had already been ordered and scheduled, this argument is premised on the factual assertion that Plaintiff could not have received follow-up treatment while he was incarcerated. This is not contained in the Complaint. Thus, the Court cannot conclude that Defendants Woodward and Malakkla are entitled to qualified immunity on said basis at this stage in the proceedings.

Second, these Defendants ask the court to "find they reasonably believed their actions

were lawful" and assert that they "had no knowledge of any actual injury" by Plaintiff. (ECF No. 19 at 9.) Again, what these Defendants allege they believed and knew are factual assertions not contained in the Complaint. Thus, even assuming that such belief and knowledge would entitle them to qualified immunity, this argument must also be rejected at this stage in the proceedings.

For the foregoing reasons, Defendants Woodward and Malakkla's motion to dismiss Plaintiff's fourth claim is DENIED.

### D. Punitive Damages

The Individual Defendants move to "dismiss the punitive damages allegations against" them. (ECF No. 19 at 9.) "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

The Individual Defendants argue as follows: "Nothing in the Complaint supports a claim for punitive damages against [the Individual Defendants]. The reasoned denial of an MRI especially does not suggest evil motive or intent, or recklessness or callous indifference on the part of Defendants Malakkla and Woodward." (ECF No. 19 at 9:19–21.) These two sentences are wholly inadequate and warrant only a brief response. The Complaint specifically identifies why Plaintiff thought punitive damages were appropriate for each of the Individual Defendants. (*See, e.g.*, ECF No. 1 at ¶¶ 62–63, 70–71.) It is the movant's burden to demonstrate that Plaintiff's request for punitive damages should be dismissed. *See Anderson v. Fishback*, No. CV-05-0729-ROS (PC), 2009 WL 2423327, at *2 (E.D. Cal. Aug. 6, 2009). This has not been met. With respect to Defendants Woodward and Malakkla, for the reasons already discussed, the Court cannot accept Defendants Malakkla and Woodward's factual assertion that they cancelled the MRI as the result of "reasoned decision." As the Individual Defendants have not bothered to discuss Defendant Wei substantively, the Court declines to do so.

### IV. **CONCLUSION**

For the foregoing reasons, the Institutional Defendants' motion is GRANTED and the Individual Defendants' motion is DENIED. Plaintiff may file an amended complaint within

13

thirty (30) days of the date this Order is filed.

IT IS SO ORDERED.

Dated: July 4, 2017

Troy L. Nunley
United States District Judge