UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT LEDFORD,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF CALIFORNIA, by and through THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION.<br><br>Defendant. | No. 2:15-cv-02381-TLN-EFB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

This matter is before the Court pursuant to Defendant State of California, by and through the California Department of Corrections and Rehabilitation's ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 27.) Plaintiff Scott Ledford ("Plaintiff") opposes the motion. (ECF No. 29.) Defendant has filed a reply. (ECF No. 31.) For the reasons discussed below, the Court hereby GRANTS Defendant's Motion to Dismiss. (ECF No. 27.)

///
///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff was an inmate placed in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at Deuel Vocational Institute ("DVI") on or about August 9, 2013. (First Amended Compl., ECF No. 25 ¶ 13.) During an initial medical screening, Plaintiff alleges he informed medical staff that he is visually impaired and unable to see any distance without corrective lenses, which he did not have with him at the time. (ECF No. 25 ¶ 14.) Plaintiff alleges that CDCR policy requires an optometrist evaluation for any person or inmate whose visual acuity is worse than 20/70. (ECF No. 25 ¶ 18.) Plaintiff filed three Accommodation Requests and Health Care Appeals, seeking treatment for his vision impairment[.]" (ECF No. 25 ¶ 15.)

On or about October 16, 2013, Plaintiff had a vision examination with Chengjie Wei, a registered nurse employed at DVI. (ECF No. 25 ¶¶ 6, 16.) Wei asked Plaintiff to read a Snellen chart[2], but after he informed her that he could not read any portion of it, Wei terminated the examination and denied Plaintiff's request for corrective lenses. (ECF No. 25 ¶ 16.) Plaintiff alleges Wei purposefully misreported his visual acuity to be 20/70 so as to deny him an optometric evaluation. (ECF No. 25 ¶¶ 17, 20.) All of Plaintiff's subsequent vision examinations have shown he has 20/200 visual acuity. (ECF No. 25 ¶ 19.)

Without treatment, Plaintiff alleges he suffered frequent headaches from squinting. (ECF No. 25 ¶ 22.) Plaintiff also performed poorly on the Test of Adult Basic Education ("TABE") due to difficulty reading and responding to the prompts. (ECF No. 25 ¶ 23.) Plaintiff attributes his disqualification from programs, jobs, and education opportunities to an artificially poor TABE score. (ECF No. 25 ¶ 23.) Plaintiff further alleges he was unable to enjoy television as other inmates did or read books from the prison library. (ECF No. 25 ¶ 24.) Despite being unable to identify most otherwise visible environmental hazards, Plaintiff had to navigate three flights of

---

[1] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's First Amended Complaint. (ECF No. 25.)

[2] According to Plaintiff, a Snellen chart is an eye chart that can be used to measure visual acuity that is 20/200 or better. (*See* ECF No. 25 ¶ 16 n.3.) Generally, the chart is printed with eleven lines of letters, with the first line consisting of one very large letter. Subsequent lines have increasing numbers of letters that decrease in size. (ECF No. 25 ¶ 16 n.2.)

metal stairs when travelling between the ground floor and his cell on the third floor. (ECF No. 25 ¶ 25.) Plaintiff further alleges he suffered constant fear and anxiety because of his inability to determine other inmates' intentions through nonverbal cues. (ECF No. 25 ¶ 24.) Plaintiff never received corrective lenses, an examination by an optometrist, or any other treatment for his vision while at DVI. (ECF No. 25 ¶¶ 21, 26.)

On or about December 2, 2013, Plaintiff was transferred from DVI to Valley State Prison ("VSP"). (ECF No. 25 ¶ 27.) While at VSP, Plaintiff alleges he made repeated requests to be evaluated by an optometrist and receive corrective lenses and he also filed additional Accommodation Requests and/or Health Care Appeals for treatment of his visual impairment. (ECF No. 25 ¶¶ 28–29.) On or about December 10, 2013, Plaintiff received a "vision impaired vest." (ECF No. 25 ¶ 30.) Plaintiff alleges limitations were placed on his job assignments, prohibiting him from "any assignments that require ability to read or see distances[.]" (ECF No. 25 ¶ 30.)

Plaintiff alleges that on or about January 2, 2014, he was walking the D-1 yard when he stepped into a small hole, fell, and suffered injuries including a Hill-Sachs fracture and a torn left rotator cuff. (ECF No. 25 ¶¶ 31, 33.) Plaintiff asserts that his inability to see the hole and subsequent fall was due to lack of treatment for his vision impairment. (ECF No. 25 ¶ 31.) Plaintiff further alleges he experienced numbness and tingling in his left fingertips, restricted range of motion in his left arm, neck spasms, and difficulty sleeping — all symptoms which he attributes to the fall. (ECF No. 25 ¶ 34.)

On or about January 8, 2014, Plaintiff received an optometrist evaluation and was prescribed glasses, which he later received on March 25, 2014. (ECF No. 25 ¶¶ 35, 39.) He was directed by the supervising registered nurse to "contact medical immediately if unable to carry out his activities of daily living in a safe manner, until his glasses arrived." (ECF No. 25 ¶ 35.)

On or about February 18, 2014, Plaintiff was evaluated at San Joaquin General Hospital by orthopedic consultant Carmelino Galang, M.D., who ordered an MRI to rule out a rotator cuff tear to Plaintiff's left shoulder. (ECF No. 25 ¶ 36.) The MRI was scheduled for March 10, 2014. (ECF No. 25 ¶ 37.) Plaintiff alleges that during another medical evaluation at VSP on or about

3

March 4, 2014, Plaintiff inquired about his upcoming MRI only to be informed it was cancelled. (ECF No. 25 ¶ 38.) Plaintiff alleges the MRI was denied by VSP employees Barbara Woodward, a nurse practitioner, and Nagabhushana Malakkla, a licensed physician and surgeon, because the procedure was too close to Plaintiff's discharge date of April 15, 2014. (ECF No. 25 ¶¶ 8–9, 38.)

Plaintiff was released as scheduled on or about April 15, 2014, before any of his health care administrative appeals reached a third level decision. (ECF No. 25 ¶¶ 40–41.) Thereafter, Plaintiff received an MRI confirming the torn left rotator cuff, and his physician promptly approved surgery. (ECF No. 25 ¶ 42.) Plaintiff alleges he experienced pain and suffering awaiting his surgery, which was delayed because of Malakkla's and Woodward's denial of the March 10, 2014 MRI. (ECF No. 25 ¶ 43.) Plaintiff further alleges that — at least up to the date of the First Amended Complaint — he has continued to experience symptoms of numbness and tingling in his left hand, restricted range of motion of his left arm, neck spasms, and difficulty sleeping due to his fall on January 2, 2014. (ECF No. 25 ¶ 44.) Plaintiff had a second surgery on his rotator cuff and claims to have been billed in excess of $32,614.72 in medical expenses related to the fall. (ECF No. 25 ¶¶ 45–46.) Lastly, Plaintiff alleges the State of California, CDCR, DVI, and VSP all receive federal funding. (ECF No. 25 ¶ 47.)

Defendant moved to dismiss Plaintiff's original Complaint for failure to state a claim. (ECF No. 14.) The Court granted Defendant's motion and granted Plaintiff leave to amend his complaint. (ECF No. 24.) Plaintiff amended his complaint to allege the same two causes of action: (1) violation of Title II of the Americans with Disabilities Act ("ADA"); and (2) Section 504 of Rehabilitation Act of 1973 ("Section 504") by Defendant. (ECF No. 25.) Defendant again moves to dismiss Plaintiff's First Amended Complaint, arguing that Plaintiff fails to state a valid claim upon which relief can be granted. (ECF No. 27.)

II.     **STANDARD OF LAW**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

(2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege " 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id*. at 680.

While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

If a complaint fails to state a plausible claim, " '[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.' " *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a) (2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

Plaintiff's First Amended Complaint asserts two separate causes of action against Defendant: (1) a violation of Title II of the ADA; and (2) a violation of Section 504. Defendant argues that this Court should dismiss the First Amended Complaint on the grounds that Plaintiff fails to state a valid claim upon which relief can be granted. (ECF No. 27 at 3.) Due to the similar nature of the two claims, the Court shall discuss these together.

A. <u>ADA and Section 504 Claims</u>

Defendant argues Plaintiff "fails to put forth either a cognizable legal theory, or sufficient facts under a cognizable theory." (ECF No. 27 at 2.) Specifically, Defendant argues that Plaintiff cannot prevail on either of his claims under the ADA or Section 504 because neither act creates a federal cause of action for a challenge to medical treatment provided to a prisoner for their underlying disabilities and because the ADA does not require state prisons to provide corrective lenses to inmates. (ECF No. 27 at 4–6.) Further, Defendant argues Plaintiff's

allegations regarding his fall also constitute a challenge to medical treatment or lack thereof, which again is not actionable under the ADA or Section 504. (ECF No. 29 at 6–7.)

Plaintiff does not dispute that the ADA and Section 504 do not provide redress for alleged inadequate medical treatment or lack of treatment. (*See* ECF No. 29 at 2–3.) Instead, Plaintiff avers he was denied "equal access to services that other inmates received," including programs, jobs, educational opportunities, recreational activities and spaces, and an accessible cell. (ECF No. 29 at 2–3.) Plaintiff argues such denial was because of his "severe vision disability." (ECF No. 29 at 3.)

The "remedies, procedures, and rights" provided by Section 504 shall be the same as those provided to any person alleging discrimination on the basis of disability in violation of the ADA. 42 U.S.C. § 12133. Therefore, as "Title II of the ADA was expressly modeled after Section 504," the two claims will be analyzed together. *Zukle v. Regents of the University of California*, 166 F.3d 1041, 1045 (9th Cir. 1999); *see also Armstrong v. Davis*, 275 F.3d 849, 862 n.17 (2001) (explaining that "[b]ecause 'the Rehabilitation Act is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance — which the [California] prison system admittedly does,'" the Ninth Circuit analyzes both under the broader ADA standard) (citations omitted).

Title II of the ADA and Section 504 "both prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To state a claim under Title II of the ADA, a plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Simmons v. Navajo County*, 609 F.3d 1011,

1021 (9th Cir. 2010). If seeking money damages under Title II, a plaintiff must allege facts demonstrating "intentional discrimination on the part of the defendant." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). That state prisons can be subject to liability under either the ADA or Section 504 is well-settled. *Armstrong v. Wilson*, 124 F.3d 1019, 1022–23 (9th Cir. 1997).

Here, Defendant asserts that Plaintiff's allegations at best demonstrate a failure "to provide adequate, timely, and competent medical treatment" rather than discrimination in violation of either the ADA or Section 504. (ECF No. 27 at 5.) This Court agrees. "The ADA prohibits discrimination *because of* disability, not inadequate treatment *for* disability." *Simmons*, 609 F.3d at 1022 (emphasis added). "[T]he same is true for [Section 504]." *Figueira ex rel. Castillo v. Cty. of Sutter*, No. 2:15-cv-0500-KJM-AC, 2015 U.S. Dist. LEXIS 144450, at *24 (E.D. Cal. Oct. 22, 2015); *see also Tandel v. Cty. of Sacramento*, No. 2:11-cv-00353-MCE-AC; No. 2:09-cv-00842-MCE-GGH, 2015 U.S. Dist. LEXIS 35335, at *51 (E.D. Cal. Mar. 20, 2015) (reaffirming that "inadequate treatment or lack of treatment for Plaintiff's medical condition does not in itself suffice to create liability under either statutory scheme"). In fact, "key elements of an ADA or [Section 504] claim cannot be reconciled with medical treatment decisions for the underlying disability." *O'Guinn v. Nev. Dep't of Corrections*, 468 Fed. App'x. 651, 653 (9th Cir. 2012).

Plaintiff has not alleged any facts to show that he was denied medical treatment *because of* his vision disability rather than treatment for his disability. Plaintiff's allegations that he was effectively denied the benefit of services such as jobs, educational opportunities, and recreational activities can be traced back to his low TABE score, which he claims was artificially low due to the lack of treatment for his vision impairment. Similar chains of causation have been rejected as "too attenuated" and, therefore, insufficient to demonstrate discrimination because of disability. *Id.* at 654; *see also Simmons*, 609 F.3d at 1021–1022. Moreover, Plaintiff's claim that he was denied an accessible recreation area because the small holes present in the prison yard "disproportionately affected inmates with vision disabilities" fails to demonstrate intentional discrimination on the part of Defendant. (ECF No. 25 ¶ 51.) Based on a dearth of facts detailing

8

how he was discriminated against specifically because of his vision impairment, Plaintiff's allegation that he was "denied equal access to services that other inmates received, on the sole basis of his disability" amounts to a conclusory statement which the Court need not accept as true. (ECF No. 25 ¶¶ 51, 57.) Accordingly, this Court grants Defendant's Motion to Dismiss Plaintiff's First Amended Complaint with respect to both the ADA and Section 504 claims.

### B. Leave to Amend

"A district court may deny a plaintiff leave to amend if it determines that allegations of other facts consistent with the challenged pleading could not possibility cure the deficiency, or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). Although a court should freely give leave to amend when justice so requires, "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

Plaintiff has had two opportunities to allege facts sufficient to support his claims, but failed to do so. This Court provided detailed analysis in its previous order on Defendant's motion to dismiss Plaintiff's original complaint as to the deficiency of the allegations and granted leave to amend. (ECF No. 24.) Plaintiff in turn filed an amended complaint bearing striking resemblance to the original complaint, and the earlier deficiencies have not been cured. Therefore, the Court finds it would be futile to allow further opportunities to amend and will not grant a second leave to amend.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendant's Motion to Dismiss (ECF No. 27) with prejudice. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: September 10, 2018

Troy L. Nunley
United States District Judge

9