1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   SCOTT LEDFORD,                             No. 2:15-cv-02381-TLN-JDP

12              Plaintiff,

13        v.                                    **ORDER**

14   THE STATE OF CALIFORNIA, et al.,

15              Defendants.

16

17        This matter is before the Court on Defendants Chengjie Wei ("Wei"), Nagabhushana

18   Malakkla ("Malakkla"), and Barbara Woodard's ("Woodward") (collectively, "Defendants")

19   Motion for Summary Judgment.  (ECF No. 44.)  Plaintiff Scott Ledford ("Plaintiff") filed an

20   opposition.  (ECF No. 45.)  Defendants filed a reply.  (ECF No. 48.)  For the reasons set forth

21   below, the Court GRANTS in part and DENIES in part Defendants' motion.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                                1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

As a preliminary matter, Plaintiff filed a notice of voluntary dismissal of his claims against Malakkla and Woodward the same day he filed his opposition to Defendants' motion for summary judgment.  (ECF No. 46.)  The Court struck Plaintiff's notice of voluntary dismissal as being procedurally improper under Rule 41(a).  (ECF No. 47.)  However, in opposition to the instant motion, Plaintiff concedes that his claims against Malakkla and Woodward should be dismissed.  (ECF No. 45 at 10.)  Plaintiff also withdraws his claims for loss of consortium.  (*Id.*)  As such, the Court need not and does not address Plaintiff's claims against Malakkla or Woodward, or his claims for loss of consortium, and GRANTS summary judgment in favor of Defendants on those claims.  The Court will only address the facts relevant to Plaintiff's claim against Wei in this Order.

Plaintiff began a term of imprisonment with the California Department of Corrections and Rehabilitation ("CDCR") on August 9, 2013.[1]  (ECF No. 45-1 at 2.)  Plaintiff alleges officers broke his eyeglasses during his arrest and the County never provided a replacement despite Plaintiff's requests.  (*Id.*)  At the time of his intake physical at Deuel Vocational Institute ("DVI"), Plaintiff was not wearing corrective lenses and there was no documentation that he needed eyeglasses.  (*Id.*)

Plaintiff submitted a request to get eyeglasses after entering DVI, which led to Plaintiff's first visit with Wei, a registered nurse, on October 17, 2013.  (*Id.* at 3.)  Wei provides deposition testimony and treatment notes indicating he performed a Snellen test during the visit, which showed Plaintiff's vision was 20/70 in both eyes.[2]  (*Id.* at 5.)  Wei states that he did not refer

---

[1]     The following facts are undisputed unless otherwise noted.

[2]     The Snellen test is a vision chart on the wall.  (ECF No. 45-1 at 4.)  The patient is asked to stand a distance from the chart and is asked to test which line of the letters he can read, covering one eye first while testing the other eye, and when completed, covering the other eye while testing the first eye.  (*Id.*)  A Snellen test is performed by having the patient read as many lines on the chart as he can, from the top of the chart to the bottom.  (*Id.* at 21.)  As the lines on the chart descend, they have more letters in smaller font.  (*Id.*)  It takes better visual acuity to read the lower lines on the chart.  (*Id.*)  If the patient successfully reads the top line only, he has 20/200 vision.  (*Id.*)  If the patient successfully reads the top two lines only, he has 20/100 vision.  (*Id.*)  If the patient successfully reads the bottom line, he has 20/20 vision.  (*Id.*)

Plaintiff to an optometrist because DVI policy required an inmate's visual acuity to be 20/100 or worse for an optometry referral.  (*Id.*)  Plaintiff saw Wei again on October 22, 2013.  (*Id.* at 7.)  At this second visit, Plaintiff told Wei he was having headaches, and Wei gave Plaintiff ibuprofen and instructed him to come back to the clinic within 72 hours if the headache continued.  (*Id.*)  According to Wei's deposition testimony and treatment notes, Wei performed another Snellen test that again showed Plaintiff's vision was 20/70 in both eyes.  (*Id.*)  Wei again did not refer Plaintiff to an optometrist.  (*Id.*)  Plaintiff did not have any further interactions with Wei after October 22, 2013.  (*Id.* at 8.)  For his part, Plaintiff disputes Wei's deposition testimony and treatment notes by providing his own deposition testimony indicating that he was unable to perform the Snellen test at all and told Wei he needed eyeglasses at both appointments.  (ECF No. 45-4 at 7–9, 17–19.)  Plaintiff further testified Wei responded to Plaintiff's inability to see the eye chart by putting his hands on his hips and saying, "We're done here."  (*Id.*)

On November 19, 2013, a non-party nurse at DVI referred Plaintiff to an optometrist. (ECF No. 45-1 at 10.)  Plaintiff did not see an optometrist before he was transferred to Valley State Prison ("VSP") on December 2, 2013.  (*Id.* at 11.)  Without corrective lenses, Plaintiff suffered chronic headaches and eye strain.  (*Id.* at 23.)  He also experienced feelings of being unsafe and unable to see where he was going.  (*Id.*)  Plaintiff alleges on January 2, 2014, he stepped into a small hole he did not see in the VSP yard, fell, and tore his rotator cuff.  (*Id.* at 12–13.)  Plaintiff saw an optometrist after the fall, who found that Plaintiff's vision was 20/200.  (*Id.* at 22.)  Plaintiff eventually received eyeglasses on March 25, 2014.  (*Id.* at 13.)

Plaintiff initiated this action on November 17, 2015 (ECF No. 1), and he filed the operative First Amended Complaint ("FAC") on August 3, 2017 (ECF No. 25).  Plaintiff asserts a 42 U.S.C. § 1983 claim against Wei for deliberate indifference to his medical needs in violation of the Eighth Amendment.  (ECF No. 25 at 9–12.)  Defendants filed the instant motion for summary judgment on December 11, 2019.  (ECF No. 44.)

**II.    STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

1    R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

2    judgment practice, the moving party always bears the initial responsibility of informing the

3    district court of the basis of its motion, and identifying those portions of "the pleadings,

4    depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

5    which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

6    *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

7    at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

8    solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

9    324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a

10    party who does not make a showing sufficient to establish the existence of an element essential to

11    that party's case, and on which that party will bear the burden of proof at trial.

12        If the moving party meets its initial responsibility, the burden then shifts to the opposing

13    party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus.*

14    *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*

15    *Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute,

16    the opposing party may not rely upon the denials of its pleadings, but is required to tender

17    evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

18    support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

19    demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

20    suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

21    the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for

22    the nonmoving party.  *Id.* at 251–52.

23        In the endeavor to establish the existence of a factual dispute, the opposing party need not

24    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

25    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

26    trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is

27    to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

28    trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

1    In resolving the summary judgment motion, the court examines the pleadings, depositions,

2    answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

3    R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

4    of the opposing party is to be believed and all reasonable inferences that may be drawn from the

5    facts pleaded must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.

6    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

7    produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight*

8    *Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally,

9    to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more

10   than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*

11   *Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational

12   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

13   **III.   ANALYSIS**

14   Plaintiff alleges Wei violated the Eighth Amendment by purposefully misreporting

15   Plaintiff's vision test results in an effort to keep him from seeing an optometrist for eyeglasses.

16   (ECF No. 25 at 9–10.)  "The government has an obligation to provide medical care for those

17   whom it is punishing by incarceration, and failure to meet that obligation can constitute an Eighth

18   Amendment violation cognizable under § 1983."  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th

19   Cir. 2014) (internal quotation marks omitted).  "In order to prevail on an Eighth Amendment

20   claim for inadequate medical care, a plaintiff must show deliberate indifference to his serious

21   medical needs."  *Id.*  "This includes both an objective standard — that the deprivation was serious

22   enough to constitute cruel and unusual punishment — and a subjective standard — deliberate

23   indifference."  *Id.*  Defendants move for summary judgment as to Plaintiff's claims against Wei

24   for two reasons: (1) there is no evidence that Wei had the requisite culpability for deliberate

25   indifference;[3] and (2) there is no causal link between Wei's medical treatment and Plaintiff's

26   claimed injury.  (ECF No. 44-1 at 17–20.)  The Court will address both arguments in turn.

27

28   _____

[3]    For the purposes of this motion, Defendants do not dispute that Plaintiff had a "serious medical need" under the objective component of the test.  (ECF No. 44-1 at 17.)

5

1             A.      Deliberate Indifference

2         Defendants argue there is no evidence Wei had anything to gain by misreporting

3 Plaintiff's vision and Wei's actions at most constituted a misdiagnosis, which is insufficient to

4 show deliberate indifference.  (ECF No. 44-1 at 17.)  Defendant's arguments are unpersuasive.

5 Plaintiff is not required to show Wei had something to gain or "intended any harm to befall"

6 Plaintiff.  *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013).  Rather,

7 "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of

8 serious harm."  *Id.*  Moreover, by framing Wei's conduct as a mere misdiagnosis, Defendants

9 ignore that the Court is presented with "differing versions of the truth" that should be resolved by

10 a factfinder, not by this Court on a motion for summary judgment.  *First Nat'l Bank of Ariz.*, 391

11 U.S. at 288–89.  On one hand, Wei's evidence suggests Plaintiff's Snellen test results showed

12 20/70 vision in both eyes and Plaintiff never told him he needed eyeglasses.  (ECF No. 44-5 at

13 76–82.)  On the other hand, Plaintiff testified he was unable to perform the Snellen test at all

14 (which would show 20/200 vision) and told Wei he needed eyeglasses at both appointments.

15 (ECF No. 45-4 at 7–9, 17–19.)  Plaintiff further testified Wei responded to Plaintiff's inability to

16 see the eye chart by putting his hands on his hips and saying, "We're done here."  (*Id.*)

17         Taking Plaintiff's evidence as true and drawing all reasonable inferences in his favor, a

18 reasonable jury could find Wei knew Plaintiff had 20/200 vision based on his inability to see the

19 Snellen chart on two separate occasions and failed to refer him to an optometrist despite the

20 substantial risk to Plaintiff's safety that would result from the delay in receiving corrective lenses.

21 *See McGuckin v. Smith*, 974 F.2d 1050, 1060–61 (9th Cir. 1992), *overruled on other grounds by*

22 *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) ("[A] finding that the

23 defendant repeatedly failed to treat an inmate properly or that a single failure was egregious

24 strongly suggests that the defendant's actions were motivated by 'deliberate indifference' to the

25 prisoner's medical needs."); *Lemire*, 726 F.3d at 1078 (stating the deliberate indifference inquiry

26 is "fact-intensive and typically should not be resolved at the summary judgment stage").  This

27 triable issue of fact precludes summary judgment as to this element.

28 ///

B.    Causation

Defendants also argue there is no causal link between Wei's medical treatment and Plaintiff's injury because he received intervening medical care and Plaintiff's fall occurred at a different prison.  (ECF No. 44-1 at 19–20.)  In opposition, Plaintiff argues Wei unquestionably delayed Plaintiff's optometry referral and without corrective lenses Plaintiff suffered chronic headaches, eye strain, and feelings of being unsafe and unable to see.  (ECF No. 45 at 9.)  Plaintiff further argues if he had corrective lenses, he would not have tripped and fallen in a hole in the VSP yard, thereby tearing his rotator cuff.  (*Id.*)

For Wei's conduct to be "the actual cause of [Plaintiff's] injury," Plaintiff must show "the injury would not have occurred 'but for' the [alleged] conduct."  *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990).  "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).  "Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for the injury."  *White*, 901 F.2d at 1506.  Wei's conduct "is not the proximate cause of [Plaintiff's] alleged injuries if another cause intervenes and supersedes [his] liability for the subsequent events."  *Id.*  However, "foreseeable intervening causes . . . will not supersede the defendant's responsibility."  *Id.*  If "reasonable persons could differ" over the question of foreseeability, "summary judgment is inappropriate and the question should be left to the jury."  *Id.*

As already discussed, there is a genuine dispute as to whether Wei knew that Plaintiff needed corrective lenses, which provides a factual predicate for the Court to draw an inference as to causation.  Plaintiff has provided evidence that he was unable to see an optometrist at DVI because he did not receive approval for a referral until seven days before his transfer to VSP.  (ECF No. 45 at 9.)  There is at the very least a reasonable inference that had Wei properly reported Plaintiff's vision on October 17, 2013, Plaintiff would have seen an optometrist and received corrective lenses sooner than he did.  While it is true Plaintiff provides no evidence that

7

1  he would have received eyeglasses prior to his fall on January 2, 2014, Plaintiff also suffered

2  more direct injuries as a result of the delay, such as headaches, eye strain, feelings of being

3  unsafe, and an inability to see where he was going.  *See Colwell*, 763 F.3d at 1068 ("[A]s long as

4  the eye remains untreated, [plaintiff] continues to suffer blindness in his right eye, which is harm

5  in and of itself, along with all of the other harms and dangers that flow from that.").

6         Based on the current record, the Court finds there is a triable issue of fact as to causation.

7  As to actual causation, the Court finds reasonable minds could differ as to whether by failing to

8  refer Plaintiff to an optometrist despite his 20/200 vision, Wei set in motion a series of acts which

9  he knew or reasonably should have known would cause Plaintiff harm.  *See Johnson*, 588 F.2d at

10  743–44.  As to proximate cause, it was arguably foreseeable that Wei's failure to refer Plaintiff to

11  an optometrist would postpone Plaintiff from receiving eyeglasses, cause Plaintiff to suffer side

12  effects such as headaches and eye strain, and even potentially result in a fall because of his

13  inability to see.  *See White*, 901 F.2d at 1506.

14         Because the Court concludes that genuine issues of fact remain as to whether Wei was

15  deliberately indifferent to Plaintiff's serious medical needs, and as to whether this conduct caused

16  the injuries Plaintiff has alleged, the Court DENIES Defendants' motion for summary judgment

17  as to Plaintiff's claim against Wei.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants'

Motion for Summary Judgment (ECF No. 44) as follows:

1.   Defendants' motion is GRANTED as to Plaintiff's claims against Malakkla and

Woodward;

2.   Defendants' motion is GRANTED as to Plaintiff's loss of consortium claim; and

3.   Defendants' motion is DENIED as to Plaintiff's claim against Wei.

The parties are ORDERED to file a Joint Status Report within thirty (30) days of the

electronic filing date of this Order indicating their readiness to proceed to trial and proposing trial

dates as to the sole remaining claim against Wei.

IT IS SO ORDERED.

**DATE:  December 8, 2021**

Troy L. Nunley
United States District Judge